# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| **KATRINA WILLIAMS,** : | |
| : | |
| **Plaintiff,** : | |
| : | **Civil Action File No.:** |
| v. : | _____ |
| : | **JURY TRIAL DEMANDED** |
| **RAINBOW PEDIATRICS** : | |
| **ASSOCIATES, P.C.,** : | |
| **THE UROLOGY INSTITUTE AND** : | |
| **CONTINENCE CENTER, P.C.,** : | |
| **FRANK E. GLOVER, JR.** : | |
| **(Individually),** : | |
| **and MARSHA D. GLOVER,** : | |
| **(Individually),** : | |
| : | |
| **Defendants.** | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Katrina Williams ("Williams"), by and through the undersigned counsel of record, and hereby files this Complaint for Damages against Defendants Rainbow Pediatrics Associates, P.C. ("Rainbow Pediatrics"), the Urology Institute and Continence Center, P.C. (the "Urology Institute"), Frank E. Glover, Jr. ("Dr. Frank"), and Marsha D. Glover ("Dr. Glover") (collectively, "Defendants"), respectfully showing the Court as follows:

## **JURISDICTION AND VENUE**

1.

Plaintiff brings the above-captioned case pursuant to (1) 29 U.S.C. § 201, *et seq.*, The Fair Labor Standards Act of 1938, as amended, ("FLSA") for failure to pay overtime wages and retaliation, and (2) state law claims for intentional infliction of emotional distress, breach of contract and, in the alternate, fraudulent misrepresentation, and unjust enrichment.

2.

This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

3.

Venue is proper in the Middle District of Georgia, Valdosta Division, pursuant to 28 U.S.C. § 1391(b), because all Defendants reside in this district and division and all of the acts and omissions giving rise to this action occurred in this district and division.

4.

This Court has Supplemental Jurisdiction over pendant state law claims under 28 U.S.C. § 1367 because said claims arise from the same nucleus of operative facts as the federal claims which form the basis of the Complaint.

Page 2 of 20
Williams v. Rainbow Peds. Assoc., P.C., *et al.*, U.S. District Court for the Middle District of Georgia
Complaint for Damages

## **PARTIES**

5.

Plaintiff Katrina Williams

Plaintiff is a citizen of the United States entitled to bring actions of this nature and type. Williams is a resident of the state of Georgia and subject to the jurisdiction of this Court.

6.

At all times relevant to this action, Plaintiff was an employee of Defendants within the meaning of the FLSA § 3(e), 29 U.S.C. § 203(e).

7.

Plaintiff performed non-exempt work for Defendants within the last three (3) years. Plaintiff did not have independent discretion or decision-making authority as to any business-related decisions; all of Plaintiff's action and job duties were undertaken at the explicit direction of her supervisors, or otherwise required approval from the same.

8.

During the relevant time period, Plaintiff worked an amount of time that was more than forty (40) hours per workweek and was never compensated for overtime hours worked by her.

9.

Defendant Rainbow Pediatrics Associates, P.C.

Defendant Rainbow Pediatrics is a professional corporation that provides pediatric services via its two locations in Moultrie and Thomasville, Georgia. Its principal place of business is located at 16 Hospital Park, Moultrie, GA 31768.

10.

Defendant Rainbow Pediatrics may be served by delivery process to its Registered Agent, Lamon Kincade, at 202 E. Mary St., Valdosta, GA 31601.

11.

Defendant the Urology Institute and Continence Center, P.C.

Defendant the Urology Institute is a professional corporation that provides urology services via its two locations in Albany and Thomasville, Georgia. Its principal place of business is located at 817 Smith Avenue, P.O. Box 2155, Thomasville, GA 31799.

12.

Defendant the Urology Institute may be served by delivery process to its Registered Agent, Frank E. Glover, Jr., at 817 Smith Avenue, Thomasville, GA 31799.

13.

Defendants Rainbow Pediatrics and the Urology Institute are, and were at all times relevant to this action, "employers" as defined by FLSA § 3(d), 29 U.S.C. § 203(d); an "enterprise" within the meaning of FLSA, 29 U.S.C. § 203 (r); and "engaged in commerce" within the meaning of FLSA, 29 U.S.C. § 203(s)(1)(A).

14.

Defendant Dr. Frank E. Glover, Jr.

At all times relevant to this action, Defendant Dr. Frank was an individual resident of the State of Georgia and the owner of Defendant the Urology Institute. Accordingly, Dr. Frank is an "employer" as defined by FLSA § 3(d), 29 U.S.C. § 203(d).

15.

Defendant Dr. Frank may be served with Summons and Process at the Urology Institute's principal place of business at 817 Smith Avenue, Thomasville, GA 31799.

16.

Defendant Dr. Marsha D. Glover

At all times relevant to this action, Defendant Dr. Glover was an individual resident of the State of Georgia, who owned and operated Defendants Rainbow

Pediatrics and the Urology Institute[1], and who regularly exercised the authority to: (a) hire and fire employees, (b) determine the work schedules for employees, and (c) control the finances and operations of Rainbow Pediatrics and the Urology Institute.

17.

Accordingly, Defendant Dr. Glover is, and was at all times relevant to this action, an "employer" as defined by FLSA § 3(d), 29 U.S.C. § 203(d).

18.

Defendant Dr. Glover may be served at Rainbow Pediatrics' principal place of business at 16 Hospital Park, Moultrie, GA 31768.

## STATEMENT OF FACTS

19.

Plaintiff was initially hired by Defendant Rainbow Pediatrics as a Receptionist on March 25, 2016. She worked from Monday to Thursday from 8:30 a.m. to 5:00 p.m., Friday from 9:00 a.m. to 3:00 p.m. and—at all times relevant to this action—was paid at an hourly rate of $14.00.

20.

Plaintiff's duties as a Receptionist included answering phone calls, checking

---

[1] Although the Urology Institute is owned by Dr. Glover's husband (Defendant Dr. Frank), Dr. Glover is the Secretary for the Urology Institute according to the Georgia Secretary of State business information and was involved in the day-to-day operations of the Urology Institute.

patients in and out, verifying insurance, receiving payments, and ordering supplies for the clinic.

21.

During Plaintiff's interview at Rainbow Pediatrics, Dr. Glover never mentioned to Plaintiff that she also expected Plaintiff to work at her husband's (Defendant Dr. Frank) clinic, the Urology Institute.

22.

Sometime in May 2016, Defendant Dr. Glover asked Plaintiff to work at the Urology Institute while she continued to work at Rainbow Pediatrics.

23.

Plaintiff's duties at the Urology Institute were mostly identical to her duties at Rainbow Pediatrics in that she answered phone calls, checked patients in and out, verified insurance, and received payments from patients.

24.

When Plaintiff asked Dr. Glover whether she was going to be compensated for her additional work at the Urology Institute, Dr. Glover assured her that she would be paid $14.00 an hour for her time worked at the Urology Institute. As a result, Plaintiff worked for the Urology Institute until June 2016.

Page 7 of 20
Williams v. Rainbow Peds. Assoc., P.C., et al., U.S. District Court for the Middle District of Georgia
Complaint for Damages

25.

Approximately two (2) weeks after Plaintiff began working for both the Urology Institute and Rainbow Pediatrics, Plaintiff once again asked Dr. Glover about receiving compensation for her work. In response, Dr. Glover told Plaintiff not to work at the Urology Institute anymore. However, Plaintiff never received payment for the time she spent working at the Urology Institute.

26.

In June 2017, Dr. Glover once again asked Plaintiff to "help [her] out" at the Urology Institute. As a result, Plaintiff worked the following schedule at both clinics until October 2017: on Tuesdays and Thursdays Plaintiff worked at the Urology Institute from 5:30 a.m. to 10:30 a.m., Rainbow Pediatrics from 10:30 to 5:15 p.m., and again at the Urology Institute from 5:15 p.m. to 6:30 p.m.; on Mondays, Wednesdays, and Fridays, Plaintiff worked at the Urology Institute from 8:00 a.m. to 10:30 a.m. and worked at Rainbow Pediatrics from 10:30 a.m. to 6:00 p.m.[2]

27.

Sometime in October 2017, Plaintiff asked Dr. Glover again about receiving appropriate compensation for her work at both Rainbow Pediatrics and the Urology Institute. In response, Dr. Glover refused to pay Plaintiff and again told Plaintiff to

---

[2] This is the same schedule Plaintiff worked when she worked for both clinics in May 2016 to June 2016; in November 2017 to December 2017; and in January 2018.

"just work at Rainbow."

28.

Despite Dr. Glover's statement, Plaintiff received a text early one morning—just a few days later—from Dr. Glover asking her to work at the Urology Institute. When Plaintiff demanded compensation for her time worked at the Urology Institute, Dr. Glover again told Plaintiff to only work at Rainbow Pediatrics.

29.

On or about November 1, 2017, Dr. Glover, for the fourth time, asked Plaintiff to work at the Urology Institute. At this time, Dr. Glover promised Plaintiff (1) a $1 raise at Rainbow Pediatrics, (2) an hourly compensation of $14 for her work at the Urology Institute in her new position as a Clinical Coordinator, and (3) "a really big Christmas sign-on bonus." Dr. Glover once again assured Plaintiff of such promises throughout her employment at both clinics.

30.

On or about December 22, 2017, Plaintiff received her paycheck and, to Plaintiff's dismay, none of Dr. Glover's promises were reflected on her paycheck: Plaintiff received one paycheck from Rainbow Pediatrics only for her time worked there at an hourly rate of $14.00; Plaintiff was never compensated for her time worked at the Urology Institute.

31.

When Plaintiff once again complained to Dr. Glover about not keeping her promises, Dr. Glover simply dismissed Plaintiff's complaint and again told Plaintiff not to work at the Urology Institute anymore. Furthermore, Dr. Glover began to exclude Plaintiff from company events such as the company's annual Christmas party.

32.

On or about January 2, 2018, Dr. Glover once again forced Plaintiff to work at the Urology Institute.

33.

Two (2) days later, Plaintiff submitted her complaint in writing to Dr. Glover. In response, Dr. Glover assured Plaintiff that she could maintain her job by solely working at Rainbow Pediatrics.

34.

However, Dr. Glover terminated Plaintiff's employment from Rainbow Pediatrics just three (3) days after Plaintiff submitted her written complaint to Dr. Glover. Furthermore, Dr. Glover attempted to disguise Plaintiff's termination as resignation even though Plaintiff clearly manifested her willingness to continue her employment at Rainbow Pediatrics.

35.

Throughout Plaintiff's employment at Rainbow Pediatrics, Plaintiff performed her duties diligently and never received any write-ups. Yet, Dr. Glover (1) forced Plaintiff to work at the Urology Institute without any compensation, (2) intentionally deceived Plaintiff about her benefits and compensation by working at the two clinics, (3) failed to address Plaintiff's numerous complaints, and (4) terminated Plaintiff's employment under the pretext that Plaintiff had resigned from Rainbow Pediatrics.

36.

In addition, since Plaintiff's termination, Dr. Glover has refused to treat Plaintiff's children—one of whom has autism—and has declined to write a referral letter for Plaintiff's certification as a Medical Assistant despite Dr. Glover's promise to do so.

37.

Plaintiff, to this day, continues to struggle to find another doctor for her children as no other pediatricians in the area are taking new patients.

## CLAIMS FOR RELIEF

## COUNT I
## UNPAID OVERTIME IN VIOLATION OF THE FLSA

38.

Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

39.

During the relevant time period, Plaintiff was an employee of Defendants within the meaning of 29 U.S.C. § 203(e)(1).

40.

During the relevant time period, Plaintiff regularly worked more than forty (40) hours per workweek by working at both Rainbow Pediatrics and the Urology Institute. Therefore, Plaintiff was entitled to be paid one-and-one-half times her regular rate of $14.00 for each hour worked in excess of forty (40) hours per workweek.

41.

Throughout her employment with Defendants, Plaintiff was never compensated for the hours she worked in excess of forty (40) hours per workweek.

42.

Defendants knew, or showed reckless disregard for the fact that they failed to pay Plaintiff's overtime compensation in violation of the FLSA.

43.

Defendants actions, policies, and/or practices described therefore violate the FLSA, 29 U.S.C. § 207(a).

44.

Furthermore, under any interpretation of the terms, Defendants' conduct is in violation of the FLSA and was both willful and in bad faith.

45.

As a result of Defendants' intentional, willful, and unlawful acts of refusing to pay Plaintiff complete overtime compensation for the overtime hours worked, Plaintiff has suffered damages in addition to incurring attorneys' fees and costs for which she is entitled to recover.

## COUNT II
## RETALIATION IN VIOLATION OF THE FLSA

46.

Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

47.

At all times relevant to this action, the relationship between Plaintiff and Defendants were a relationship of "employee" to "employer."

48.

During Plaintiff's employment with Defendants, Plaintiff engaged in a statutorily protected activity under the FLSA by opposing an employment practice she reasonably believed was unlawful under the FLSA when Plaintiff complained about not being compensated for her work at the Urology Institute.

49.

Defendants unlawfully retaliated against Plaintiff by, among other things, preventing Plaintiff from working at the Urology Institute on at least four (4) different occasions and ultimately terminating Plaintiff's employment just three (3) days after Plaintiff filed a written complaint to Defendants.

50.

Defendants' actions, policies, and/or practices described herein violate the FLSA's anti-retaliation provision.

51.

As a proximate and direct result of Defendants' conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities, for which she is entitled to recover.

## COUNT III
## BREACH OF CONTRACT

52.

Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

53.

Plaintiff and Defendant Dr. Glover entered into a valid contract whereby Defendants would pay Plaintiff an hourly pay of $14.00 for the time Plaintiff worked at the Urology Institute and to raise Plaintiff's hourly pay by $1.00 at Rainbow Pediatrics.

54.

In reliance on the contract, Plaintiff worked at the Urology Institute but was never compensated for the hours worked and never received a raise at Rainbow Pediatrics.

55.

Defendants breached this contract by failing to pay Plaintiff for her time worked at the Urology Institute and by failing to give Plaintiff a raise at Rainbow Pediatrics.

56.

As a direct and proximate result of Defendant's willful and unlawful conduct, Plaintiff has and will continue to suffer damages for which she is entitled to recover

as provided by law.

## COUNT IV
## FRAUDULENT MISREPRESENTATION

57.

Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

58.

Defendant Dr. Glover made a false representation when she told Plaintiff, on at least four (4) different occasions, that she was going to compensate Plaintiff for her work at the Urology Institute and that she was going to give Plaintiff a raise for her work at both clinics.

59.

Dr. Glover made such representation to Plaintiff—on at least four (4) different occasions—to induce Plaintiff to work additional hours at the Urology Institute with no intention of compensating Plaintiff for her work.

60.

In reliance on Dr. Glover's false representation, Plaintiff worked—in addition to her work at Rainbow Pediatrics—at the Urology Institute from May 2016 to June 2016, from June 2017 to October 2017, from November 2017 to December 2017, and in January 2018 without any compensation.

61.

Should the Court find that there is no contract between Plaintiff and the Defendants, then the Defendants are liable to Plaintiff for damages in an amount to be proven at trial and, at a minimum, for the reasonable value of the services Plaintiff has provided to Defendants.

## COUNT V
## UNJUST ENRICHMENT

62.

Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

63.

Defendants engaged in unconscionable conduct when it knowingly and fraudulently induced Plaintiff to work at both Rainbow Pediatrics and the Urology Institute without compensation and proper overtime pay.

64.

As a result of their actions, Defendants received a benefit from Plaintiff, the retention of which is against equity and good conscience.

65.

Should the Court find that there is no contract between Plaintiff and the Defendants, then the Defendants are liable to Plaintiff for damages in an amount to

be proven at trial and, at a minimum, for the reasonable value of the services Plaintiff has provided to Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court;

1) Grant Plaintiff a trial by jury as to all triable issues of fact;

2) Grant declaratory judgment that Plaintiff's rights under the FLSA and her state law claims were violated;

3) Award to Plaintiff compensatory damages in an amount to be determined by a jury;

4) Award appropriate back pay, including reimbursement for lost salary, bonuses, incentive compensation, pension, social security, and other benefits in amounts to be shown at trial;

5) Award Plaintiff pre-judgment interest on any award of back pay and lost benefits made by the jury as required by law;

6) Award liquidated damages equal to back pay and lost benefits for Defendants' willful violations of the FLSA;

7) Award punitive damages in an amount reasonable and commensurate with harm done and calculated to be sufficient to deter such conduct in the future;

8) Award Plaintiff's attorneys' fees, costs, and disbursements; and

9) Award Plaintiff such further and additional relief as may be just and appropriate.

Dated this 21st day of February, 2018.

**MOLDEN & ASSOCIATES**

/s/ Regina S. Molden____
Regina S. Molden
Georgia Bar. No. 515454
Peachtree Center – Harris Tower
233 Peachtree St., N.E.
Suite 1245
Atlanta, GA 30303
Telephone: (404) 324-4500
Facsimile: (404) 324-4501
Email: RMolden@moldenlaw.com
Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 in the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

/s/ Regina S. Molden
Regina S. Molden
Georgia Bar. No. 515454
