IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| KATRINA WILLIAMS, : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION FILE NO: |
| v. : | 7:18-CV-00031-HL |
| : | |
| RAINBOW PEDIATRICS ASSOCIATES, : | |
| P.C., THE UROLOGY INSTITUTE AND : | |
| CONTINENCE CENTER, P.C., FRANK E. : | |
| GLOVER, JR., Individually, and MARSHA : | |
| D. GLOVER, Individually, : | |
| : | |
| Defendants. : | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Come now Rainbow Pediatrics Associates, P.C., The Urology Institute and Continence Center, P.C., Dr. Frank E. Glover, Jr., and Dr. Marsha D. Glover (collectively "Defendants"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and in accordance with Rule 56 of the Local Rules of the United States District Court for the Middle District of Georgia, and files this their reply Brief in Support of Motion for Partial Summary Judgment on the basis that Defendants are entitled to partial summary judgment as a matter of law. As grounds for the grant of this Motion, Defendants show this Court as follows:

**I.   Plaintiff should not be allowed to create a factual dispute by way of false affidavit testimony that directly contradicts the timesheets Plaintiff created and produced as a *just and reasonable inference* of her hours worked.**

On July 16, 2018, the Defendants served Plaintiff's counsel with written discovery. **See Defendants' First Requests for the Production of Documents to Plaintiff attached hereto as Exhibit "A", and by this reference incorporated herein.** Specifically, Defendants' Requests for the Production of Documents No. 3 asked Plaintiff to provide "[a]ny and all documents

regarding the hours of employment and compensation of Plaintiff from March 25, 2016 through January 4, 2018, including but not limited to timecards/timesheets, work schedules, payroll records, calendars, appointment books, emails, notes, day-timers, diaries, including those maintained in electronic form, that you have kept or which were kept for you." *Id*. Plaintiff's response to those discovery requests stated "Plaintiff will produce responsive documents". **See Plaintiff's Response to Defendants' First Requests for the Production of Documents attached hereto as Exhibit "B", and by this reference incorporated herein.** Included with Plaintiff's written responses were several pages of documents labeled "Rainbow Pediatrics Associate P.C. Bi- Weekly Employee Timesheet" that covered the majority of Plaintiff's employment from March 25, 2016 through her date of resignation on January 4, 2018. [Doc. 27-4]. These detailed documents hand written by the Plaintiff provide detailed information such as (1) the applicable pay period; (2) the time she clocked in and out; (3) whether she was on vacation; (4) whether she called in sick; (5) whether she had to leave early for an appointment, a sick child, or due to bad weather; (6) whether she took a lunch break or not; (7) the location of her work assignment; (8) Holidays; (9) when she reported to work late because of school obligations; (10) training session; (11) when she waited for a delivery truck; (12) when she was given permission to leave work early; (13) the occurrence of audits, and (14) whether Plaintiff submitted the times sheets to Dr. Marsha Glover (hereinafter, "Dr. Glover") by putting them in her box or faxing them. *Id*. The timesheets were prepared by the Plaintiff in her own handwriting, they were signed by the Plaintiff, and they were dated by the Plaintiff. Some of the timesheets even state. *Id*.

    To bring a claim for unpaid overtime wages, Plaintiff must first prove she performed work but was not properly compensated. To do so, Plaintiff produced timesheets that Defendants contend state with clarity and precision the number of hours allegedly worked, the amount and nature of

the work performed, where the work was performed, and when the work was completed. *See* Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1314-15 (11th Cir. 2007). In an attempt to avoid summary judgment, Plaintiff for the first time claims her timesheets are "notes" that she maintained only for her records because she wanted to keep track of her time. [Doc. 34-1, Ex. A ¶ 20]. It is rare for an employer, having failed to maintain for itself sufficient records of an employee's time, to ask the Court to accept as true the timesheets proffered by the employee. In most instances, the employer negates the timesheets maintained by the employee. Here, however, Defendants agree that the hours documented by Plaintiff on her timesheets are a just and reasonable inference of her hours worked. Under the burden shifting analysis, Defendants accepted Plaintiff's timesheets as an accurate representation of the hours she actually worked and further proof that Plaintiff did not, in fact, work the hours alleged in her Complaint and affidavit. It is telling that the only time that is not accounted for in Plaintiff's very detailed "notes" are those hours for which she now claims she is owed overtime compensation. Further it belies reason that Plaintiff would need to document her hours worked at Rainbow when – by her own admission – Plaintiff did not accrue overtime by working at Rainbow Pediatrics. [Doc. 1].[1] According to Plaintiff, on those occasions when Plaintiff claims she worked at Rainbow Pediatrics and the Urology Institute, her hours worked were set according to a fixed schedule. *Id*. If true, there certainly was no need for Plaintiff to keep "notes". It is important to note Plaintiff offers this Court absolutely no credible explanation whatsoever as to why she failed to record in her notes the same hours alleged in her Complaint and affidavit.

---

[1] According to Plaintiff, she only incurred overtime during the four purported instances of her working at the Urology Institute and Rainbow Pediatrics. [Doc 1].

After June 2016, Plaintiff claims Dr. Glover instructed her to not submit timesheets and Dr. Glover "explicitly told Ms. Williams not to keep track of her hours worked at the Urology Institute." [Doc. 34, p. 5; Doc. 34-1, Ex. A, ¶¶ 18-19]. In support of this allegation, Plaintiff's response brief directs this Court's attention to the deposition testimony of Dr. Glover. Yet, the cited deposition testimony of Dr. Glover is the exact opposite of what Plaintiff has represented to this Court!

> **Q.** You mentioned earlier that she didn't turn in timesheets. Can you tell me about that?
> **A.** Okay. The routine has been that people would turn in timesheets. That they would log their hours in and give them to me and my boss and so I would turn those hours in to ADP, if I had any discrepancies or questions that came to mind, give me an opportunity to look at those. That kind of became sporadic later on. First, in 2016, she was doing that, you, pretty well.
> **Q.** Okay.
> **A.** Then later on it became kind of sporadic. And I didn't push it. I would ask occasionally but I had a lot of other stuff going. I knew where she was working going by her schedule.
> **Q.** Okay.
> **A.** And I was keeping mentally a note of where my one employee was supposed to be. Then I asked her if she was—defined period of time. **I was like, okay, Katrina I need for you to turn some timesheets in.** (emphasis added)

Deposition of Marsha Glover, Doc. 27-3, 83:14 – 84:9.

At no point whatsoever did Dr. Glover ever "explicitly" tell Plaintiff to not keep track of her hours or to not submit timesheets. *Id*. Dr. Glover repeatedly testified that she asked Plaintiff to turn in her timesheets to no avail. *Id*., 50:5-0; 83:14 – 84:9. It is improper for Plaintiff and her attorneys to knowingly mislead this Court. Similarly, Plaintiff was not told by Dr. Marsha Glover ("Dr. Glover") to not report her hours worked. This false statement is so unbelievable it almost deserves no rebuttal. Why would Dr. Glover over pay the Plaintiff for several months, and compensate Plaintiff for working 80 hours in a pay period when Plaintiff, by her own admission, worked significantly less than that during those periods of time that she was only at a Rainbow

location? *See* e.g., Plaintiff's Timesheets and Complaint. With regard to Plaintiff's claims she was not responsible for submitting her timesheets and her timesheets were not accepted by Defendants, that too is unfathomable. Why then would Rainbow Pediatrics go through the trouble of creating the timesheets in the first place? Why would Rainbow Pediatrics go through the trouble of creating a handbook that specifically states employees are required to submit a timesheet at the end of each week? [Doc. 27-6]. Why would Plaintiff write at the bottom of her supposed "notes"/timesheets - "took over to put in her box" or "took a copy to Dr. Glover box"? [Doc. 27-4]. Why would Plaintiff fax her timesheets to Dr. Glover? *Id*. This Court should not countenance Plaintiff's continued false statements when the evidence on file with this Court so clearly refutes every tall tale told she has told.

    Plaintiff's timesheets can, and should be accepted by this Court as convincing substitutes for Rainbow's lack of recorded hours. Plaintiff's "notes" or timesheets were maintained from her first day of employment right up until her last day of employment. *Id*. Yet, she has essentially asked this Court to disregard the very information she produced because it negates the false allegations over overtime made in her Complaint. To believe the Plaintiff would require this Court to take no account of the entries on Plaintiff's timesheets which she prepared contemporaneous with the occurrence of the events triggering the instant litigation. At no point prior to the filing of a dispositive motion did Plaintiff or her counsel ever claim the above referenced timesheets were incomplete "notes". This after-the-fact falsehood "toes the line of candor and flouts the spirit of the Federal Rules." Brantley v. Ferrell Elec., Inc., 112 F. Supp. 3d 1348, 1358 (S.D. Ga. 2015). Plaintiff's incredulous attempt to create a factual dispute for purposes of avoiding summary judgment borrows from a famous line in a Marx Brothers movie, "Who are you going to believe, me or your lying eyes?" As the trier of fact for purposes of summary judgment, this Court has a

right to reject those contentions in Plaintiff's affidavit which fly in the face of evidence to the contrary. As much is especially true when the conflicting evidence was also produced by Plaintiff! Drawing all reasonable inferences in a light most favorable to the Plaintiff, does not require this Court to blindly accept Plaintiff's self-serving affidavit testimony when that testimony negates the best evidence of Plaintiff's hours worked, i.e., the "notes" maintained by Plaintiff.

**II.     Plaintiff produced time records evidencing the amount and extent of her work as a matter of just and reasonable inference and this Court can rely on those time records to find that Plaintiff did not work overtime without compensation.**

Rainbow does not dispute its records of Plaintiff's hours worked were sparse. In part, the records were sparse because Plaintiff did not always submit her timesheet as she was instructed to do by Dr. Glover and as she was required to do in accordance with Rainbow's written policy. In a situation where an employer does not have sufficient records, the employee can meet her burden of proof by producing "sufficient evidence to show the amount and extent and extent of that work *as a matter of just and reasonable inference*". Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687, 66 S. Ct. 1187 (1946) (emphasis added). According to Plaintiff, Defendant's motion for partial summary judgment should be denied because Plaintiff's affidavit testimony is sufficient evidence to show the amount of uncompensated overtime. [Doc. 34, p.11] However, the final burden to come forth with "evidence of the precise amount of work performed or evidence to negate the reasonableness of inference to be drawn from employee's evidence" belongs to the employer. *Id*. at 967-88, 66 S.Ct. 1187. To rebut Plaintiff's affidavit testimony, Defendants presented Plaintiff's handwritten timesheets. The timesheets negate any reasonable inference to be drawn from Plaintiff's testimony of her hours worked and further negate any claim by Plaintiff that Dr. Glover discouraged or squelched Plaintiff from accurately reporting her hours worked. This is not a case where there is a total lack of documentation to establish the hours worked by

Plaintiff, this is a case where the Plaintiff has asked this Court to reject the written evidence of her hours worked. There simply is no merit in Plaintiff's testimony when her timesheets demonstrate she was not working overtime without pay.

### III. Defendants stated a legitimate non-retaliatory reason for the adverse employment action – Plaintiff resigned.

The undersigned counsel has never before heard of an employer directing its employee to "re-draft" a resignation letter, and certainly never heard of an employer asking an employee to draft a letter to resign from a company that the employer does not believe the employee works for. But, it is understood this Court must accept as true Plaintiff's version of events for purposes of ruling on the instant dispositive motion. In that regard, the Court should note two very striking differences between Plaintiff's Exhibit 7 and Exhibit 8. [Doc. 34]. For example, in Exhibit 8, Plaintiff added the following sentences that were included not in the first resignation letter, (1) "I know I have given up with Urology but I have no more fight in me there. I only want to work Rainbow."; and (2) "We have discussed pay and is not getting paid to be there." [Doc. 34-1, Ex. 8]. Dr. Glover has testified that she only received on letter of resignation from Plaintiff. [Doc. 27-3, 103:17-20; Doc. 34-1, Ex. 7]. Defendants contend this second letter is a fraud perpetrated upon this Court that was fabricated after Dr. Glover called Plaintiff's bluff and accepted her resignation. As the sole employee of Rainbow Pediatrics, Plaintiff mistakenly thought her letter of resignation would give her some degree of leverage. She was wrong.

At no point prior to her resignation did Plaintiff ever complain to Dr. Glover about unpaid overtime or straight time wages. **See Affidavit of Dr. Marsha Glover, attached hereto as Exhibit "C" and by this reference incorporated herein**. Nevertheless, giving Plaintiff the inferences she is due, there is no dispute Plaintiff typed two letters, both of which state she resigned. [Doc. 27-8; Doc. 27-9]. For this Court to find Defendants took retaliatory action against

Plaintiff by terminating her, the Court would have to wholly ignore the words chosen by Plaintiff in both letters. In her response brief, Plaintiff's alleges Dr. Glover retaliated against in the following ways: (1) by prohibiting Plaintiff "from working at the Urology Institute, thereby decreasing [Plaintiff's] work hours"[2]; (2) by refusing to provide medical treatment to Plaintiff's autistic son; and (3) by terminating Plaintiff from Rainbow. [Doc. 34, p. 15]. Contrarily, Plaintiff's complaint alleges Dr. Glover retaliated by (1) telling Plaintiff to **NOT** work at the Urology Institute on at least four (4) different occasions; and (2) terminating Plaintiff following her submission of the January 4, 2018 letter. [Doc. 1 at ¶ 49]. Pretermitting how Plaintiff claims Dr. Glover may have retaliated against her, the fact remains that retaliation cannot occur when the Plaintiff has resigned.

As is the case with her timesheets, i.e. "notes", Plaintiff wants to have it both ways and expects this Court to put on blinders to her actions. On the one hand, she tells this Court that she was jointly employed by Urology Institute and Rainbow Pediatrics. However, on January 4, 2018, she chose to resign from only the Urology Institute. To make sense of Plaintiff's version of events, the Court should not ignore a key allegation made in her Complaint - that the Urology Institute and Rainbow Pediatrics were her joint employers. Accepting that as true, and also accepting as true that Plaintiff's letter purportedly only intended to resign from Urology Institute, Defendants could not have acted with retaliatory intent by accepting Plaintiff's resignation from the Urology Institute as also giving them notice of her resignation from Rainbow Pediatrics. Plaintiffs have failed to produce any statute or legal authority which suggest that an employee's resignation from one employer precludes her termination from a joint employer. Plaintiff's multiple notices of

---

[2] The Court should take note that Plaintiff's Complaint alleges she was "forced" to work at the Urology Institute. [Doc. 1, ¶¶ 32, 35].

resignation to the Urology Institute certainly gave Dr. Glover a legitimate non-retaliatory reason for terminating Plaintiff from the other purported joint employer.

Plaintiff's affidavit states that after she tendered the first resignation letter to Dr. Glover, Dr. Glover encouraged Plaintiff to re-draft the letter for the sole purpose of making certain it was clear Plaintiff could continue her employment at Rainbow. Accepting that statement as true, it is unbelievable that Dr. Glover would take retaliatory action against Plaintiff by terminating her because of the second letter. Dr. Glover, of course, expressly denies she received more than one resignation letter from the Plaintiff and, as such, she further denies she told Plaintiff to reword her first resignation letter. **Glover Affidavit, ¶¶ 22-26.** Alternatively, Plaintiff's affidavit states that on January 4, 2018, she submitted the document identified as Plaintiff's Exhibit 7 to Dr. Glover. In that document, Plaintiff purportedly advised she would no longer provide services at the Urology Institute however she desired to continue her employment relationship with Rainbow Pediatrics. [Doc. 34-1, Ex. 7]. The very first sentence of Exhibit 7 reads "[i]t saddens me and breaks my heart to even have to type up this letter of **Resignation** from working with you and Dr. Glover." *Id*. (emphasis added). The exact same resignation is proffered in Exhibit 8, but this letters expressly adds "at the Urology Office." [Doc. 34-1, Ex. 8]. Plaintiff's explanation that Dr. Glover told her to rewrite the letter to expressly state she would continue to work at Rainbow is baffling, at best. If true, Plaintiff offers no explanation of what occurred during the interim period that caused Dr. Glover to change her mind and ultimately terminate her.

Inexplicably, Plaintiff's affidavit also states she last complained about unpaid overtime wages on December 22, 2017. In response to that verbal complaint, however, Plaintiff admits she was not terminated. Instead, she was given a "Christmas sign-on bonus" in the amount of $1,500.00.

**Glover Affidavit, ¶ 19**.  Plaintiff also claims she lodged verbal complaints about uncompensated overtime wages in June 2016, June 2017, and again in November 2017. [Doc. 34-1, Ex. A].  Again, Plaintiff was not terminated in response to any of those verbal complaints.  Plaintiff would have this court believe that after reducing her complaint of unpaid overtime to written format, Dr. Glover finally decided to terminate her.[3]  That simply is not true.  Dr. Glover accepted Plaintiff's documented notice of resignation and such actions do not evidence retaliatory discharge.

Even if this Court were to accept as true that Exhibit 7 is the unedited original letter drafted by Plaintiff and handed to Dr. Glover, a claim for retaliation is belied where Dr. Glover has testified that she interpreted Plaintiff's letter – either or both of them – to be a letter of Plaintiff's resignation of employment from Rainbow. **Glover Affidavit, ¶ 26**.   Dr. Glover testified that Plaintiff was not an employee of the Urology Institute.  Plaintiff was the sole employee of Rainbow Pediatrics.  *Id*. **at ¶ 10**.  Despite the fact that Plaintiff may have believed she had two separate employers, that was not how Defendants viewed her position.  To that end, when Plaintiff submitted Exhibit 7 to Dr. Glover, it was received as a resignation letter from Rainbow Pediatrics.

This 17th day of May, 2019.

                                                                                 WATSON SPENCE LLP
*Attorneys for Defendants*

BY:   /s/ Alfreda L. Sheppard
        Alfreda L. Sheppard
        Georgia State Bar No. 525106
        Post Office Box 2008
        Albany, Georgia   31702-2008
        (229) 436-1545 Telephone
        (229) 436-6358 Facsimile
        asheppard@watsonspence.com

---

[3] The Court should note that in Plaintiff's Exhibit 7, she makes no complaint whatsoever about unpaid overtime wages.  [Doc. 34-1, Ex. 7]

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all persons duly registered therewith to receive filings in the above styled matter.

                                                WATSON SPENCE LLP
                                                *Attorneys for Defendants*

By:    */s/* Alfreda L. Sheppard
           Alfreda L. Sheppard